# EXHIBIT A

JENNIFER T. SANCHEZ (191548)
R. HUDSON HOLLISTER (323133)
GIBSON ROBB & LINDH LLP
1255 Powell Street
Emeryville, California 94608
Telephone:  (415) 348-6000
Facsimile:  (415) 348-6001
Email:  jsanchez@gibsonrobb.com
   rhollister@gibsonrobb.com

Attorneys for Plaintiff
REGENTS OF THE UNIVERSITY OF CALIFORNIA
and THE TRAVELERS INDEMNITY COMPANY

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco
**04/14/2022**
**Clerk of the Court**
BY: LAURA SIMMONS
Deputy Clerk

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

(UNLIMITED JURISDICTION)

| | |
|---|---|
| THE REGENTS OF THE UNIVERISTY OF CALIFORNIA and THE TRAVELERS INDEMNITY COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>GETINGE USA SALES, LLC,, TUTTNAUER U.S.A. CO. LTD., and DOES 1-20, inclusive,<br><br>Defendants. | Case No.<br><br>**CGC-22-599204**<br><br>**COMPLAINT** |

## **PARTIES**

1. Plaintiff The Regents of the University of California ("Regents") is a California corporation.

2. Plaintiff The Travelers Indemnity Company ("Travelers") is a Connecticut corporation authorized to do business in California. Travelers is the subrogated insurer of the Regents. Prior to the damage described in this Complaint, Travelers issued its policy of insurance agreeing to indemnify the Regents against loss of or damage to their property, and Travelers has become

COMPLAINT
Case No. _____; Our File No.  5812.72

obligated to pay and to the person(s) entitled to payment under said policy. Travelers' payments and obligation to make payments were required by the terms of the insurance policy and Travelers has not made payments as a volunteer. Travelers has a right of subrogation against Defendants for its payments under its policy of insurance.

3. Defendant Getinge USA Sales, LLC, is a Delaware limited liability company authorized to do business in California.

4. Defendant Tuttnauer U.S.A. Co., Ltd. is New York corporation authorized to do business in California.

5. The true names of Defendants sued herein as Doe 1 through Doe 20, each of whom is or may be responsible for the events and matters herein referred to, and each of whom proximately caused or may have caused or contributed to the damage herein complained of, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff will amend its complaint to show the true names of said Defendants when the same have been ascertained.

## FIRST CAUSE OF ACTION

### Negligence

**(Defendants Getinge USA Sales, LLC, Tuttnauer U.S.A. Co., Ltd and Does 1-10)**

6. Plaintiffs reallege and incorporate here with like force and effect as though set forth fully here each and every allegation of paragraphs 1 through 5 as set forth above.

7. At all relevant times, the Regents were operating a lab at Rock Hall, 1550 4th St. San Francisco, California, and equipment in the lab included an autoclave manufactured by Defendant Tuttnauer U.S.A. Co., Ltd used for sterilization (hereafter the "subject autoclave").

8. Prior to April 24, 2019, Defendants Getinge USA Sales, LLC, and Does 1-10 (hereafter "Getinge") agreed to perform maintenance and repair work on the subject autoclave.

9. Getinge had a duty to perform all service and maintenance work on the autoclave in a safe, professional, careful, and competent manner.

10. At all times material herein Getinge so negligently and carelessly serviced and/or maintained the subject autoclave that it was not fit or safe for its intended purpose.

11. At all times herein material Getinge failed to warn the Regents of the unfit and unsafe condition of the subject autoclave.

12. Defendants Tuttnauer U.S.A. Co., Ltd. and Does 11-20 (hereafter "Tuttnauer") was in the business of manufacturing, designing, building, fabricating, assembling, supplying, labeling, testing, inspecting, packaging, fabricating, marketing, rebranding, constructing, and/or providing warnings for the subject autoclave.

13. Tuttnauer knew and intended that the subject autoclave would be used by users such as the Regents in the manner which it was being used by the Regents.

14. Tuttnauer manufactured, designed, built, fabricated, assembled, supplied, labeled, tested, inspected, packaged, fabricated, marketed, rebranded, constructed, and/or provided warnings for the subject autoclave such that it was in a dangerous and defective condition as to design, manufacture, and warnings when it left Tuttnauer's possession and/or control and was unsafe for its intended use.

15. On or about April 24, 2019, the autoclave failed while being used as intended. While under pressure a door on the subject autoclave failed releasing high-pressure steam that exploded into the room causing severe building damage.

16. As a direct and proximate result of the Defendants negligence, carelessness, and failure to warn of the unfit and unsafe condition of the subject autoclave, Plaintiffs incurred damages, including but not limited to damage the Regents' property and clean-up costs, in an amount of at least $403,327.

Wherefore, Plaintiffs pray for judgment against Defendants Getinge as set forth below.

## SECOND CAUSE OF ACTION

**Strict Product Liability - Manufacturing Defect/Design Defect/Failure to Warn**

**(Defendants Tuttnauer U.S.A. Co., Ltd. and Does 11-20)**

17. Plaintiffs reallege and incorporate here with like force and effect as though set forth fully here each and every allegation of paragraphs 1 through 5 above.

18. Defendants Tuttnauer U.S.A. Co., Ltd. and Does 11-20 (hereafter "Tuttnauer") were in the business of manufacturing, designing, building, fabricating, assembling, supplying, labeling,

testing, inspecting, packaging, fabricating, marketing, rebranding, constructing, and/or providing warnings for the subject autoclave.

19. Tuttnauer knew and intended that the subject autoclave would be used by users such as the Regents in the manner which it was being used by the Regents.

20. Tuttnauer manufactured, designed, built, fabricated, assembled, supplied, labeled, tested, inspected, packaged, fabricated, marketed, rebranded, constructed, and/or provided warnings for the subject autoclave such that it was in a dangerous and defective condition as to design, manufacture, and warnings when it left Tuttnauer's possession and/or control and was unsafe for its intended use

21. On or about April 24, 2019, the autoclave failed while being used as intended. While under pressure a door on the autoclave failed releasing high-pressure steam that exploded into the room causing severe building damage.

22. The subject autoclave was defective as to design, manufacture, and warnings, causing the subject autoclave to be in a dangerous and defective condition that made it made it unsafe for its intended use.

23. As a direct and proximate result of the foregoing negligence and carelessness, and failure to warn of the unfit and unsafe condition of the subject autoclave, Plaintiffs incurred damages, including but not limited to damage the Regents' property and clean-up costs, in an amount of at least $403,327.

Wherefore, Plaintiffs sprays for judgment against Tuttnauer as set forth below.

### THIRD CAUSE OF ACTION

**Breach of Contract**

**Defendants Getinge USA Sales, LLC, and Does 1-10**

24. Plaintiffs reallege and incorporate here with like force and effect as though set forth fully here each and every allegation of paragraphs 1 through 5 above.

25. Defendants Getinge agreed in return for good and valuable consideration to perform maintenance, inspection, and repair work on the autoclave. A copy of the written Service Contract is attached as Exhibit A.

26. Getinge breached the agreement by failing to use reasonable care and properly maintain, inspect, and repair the subject autoclave.

27. As a result of Getinge's breach, on or about April 24, 2019, the autoclave failed while being used as intended. While under pressure a door on the autoclave failed releasing high-pressure steam that exploded into the room causing severe building damage.

28. As a direct and proximate result of the foregoing negligence and carelessness, and failure to warn of the unfit and unsafe condition of the subject autoclave, Plaintiffs incurred damages, including but not limited to damage the Regents' property and clean-up costs, in an amount of at least $403,327.

WHEREFORE, Plaintiffs prays for judgment against the Defendants, and each of them, as follows:

1. For Plaintiff's damages in the amount of at least $403,327, as according to proof;
2. For prejudgment interest according to proof, pursuant to Civil Code §3287 or §3288;
3. For Plaintiffs' costs of suit herein; and
4. For such other and further relief as to the Court may deem just and proper.

Respectfully submitted,

Dated: April 14, 2022         GIBSON ROBB & LINDH LLP

_____
Jennifer Tomlin Sanchez
Attorneys for Plaintiff
REGENTS OF THE UNIVERSITY OF CALIFORNIA and THE TRAVELERS INDEMNITY COMPANY

COMPLAINT
Case No. _____; Our File No. 5812.72                                5

# EXHIBIT A

Healthcare - Getinge USA Sales LLC
Customer Service
1777 East Henrietta Road
ROCHESTER NY 14623
USA
Phone: 800-950-9912


GETINGE

**RENEWAL SERVICE CONTRACT**
**#6900103831**                **11/02/2018**

| Fax: | 585-214-6034 |
|---|---|
| Effective Date: | 12/01/2018 - 11/30/2019 |

Final Ship to 2144616

UNIV OF CALIFORNIA SF
1855 FOLSOM ST STE 304
SAN FRANCISCO CA  94103

| Model nr. | Asset No. | Serial no. | Location | PM/YR | Price |
|---|---|---|---|---|---|
| 1522222 Ster, Sterilizer, Ot | GETINGE | 5103094-010-01 | NEUROSCIENCES | 4 | 10,380.00 |
| TechIdent no GETINGE | | | | | |
| 2110 C/S STAGER STACKER | DETACH | F09578-2-3 | M.B.GEN | 4 | 3,756.00 |
| TechIdent no GETINGE | | | | | |
| 2110 C/S TRANSFER TABLE -1 | | F09578-1 | M.B.GEN | 4 | 1,344.00 |
| TechIdent no GETINGE | | | | | |
| 2110 CAGE & RACK WASHER | GETINGE | URA010741 | NEUROSCIENCES | 4 | 14,724.00 |
| TechIdent no GETINGE | | | | | |
| 3053-S STG 3 STERILIZER | STERIS | 013269501G | MT ZION BASMNT | 4 | 10,692.00 |
| TechIdent no TBJ | | | | | |
| 3200LS TUNNEL WASHER TUNNEL WASHER | GETINGE | URA010826 | M.B.GEN | 4 | 14,388.00 |
| TechIdent no TBJ | | | | | |
| 3236LS TUNNEL WASHER | GETINGE | USR0909002 | MED SCIENCE | 4 | 14,748.00 |
| TechIdent no ABB | | | | | |
| 3600 BD BEDDING DISPENSER | STERIS | 3621807001 | HELEN DILLARD | 4 | 8,700.00 |
| TechIdent no DETACH | | | | | |
| 3600 BEDDING DISPENSER BEDDING DISPENSER | STERIS | 3601402010 | M.B GEN | 4 | 8,700.00 |
| 37X85X85 SLH FINN-AQUA STERILIZER | STERIS/FINNAQUA | 010230327G | MED CTR PSB | 4 | 15,228.00 |
| TechIdent no STERIS | | | | | |
| 37X85X85 SLH FINN-AQUA STERILIZER | STERIS/FINNAQUA | 010310315G | MED CTR PSB | 4 | 15,228.00 |
| TechIdent no GETINGE | | | | | |
| 37X85X85 SLH FINN-AQUA STERILIZER | STERIS/FINNAQUA | 010590319G | MED CTR PSB 1FL | 4 | 15,228.00 |
| TechIdent no GETINGE | | | | | |
| 4600 CAGE & RACK WASHER | STERIS | 882927 | GEN HOSP | 4 | 15,168.00 |
| TechIdent no GETINGE | | | | | |
| 4601 CAGE & RACK WASHER | STERIS | 3615796001 | MT ZION BASMNT | 4 | 15,168.00 |
| TechIdent no STERIS | | | | | |
| 533 STERILIZER | GETINGE | 03M04628 | PSB OR | 4 | 6,144.00 |
| TechIdent no STERIS | | | | | |
| 533LS Sterilization,21" Sm | GETINGE | 09G09472 | CVRB 5TH FL | 4 | 6,144.00 |
| TechIdent no STERIS | | | | | |
| 6000 TUNNEL WASHER | STERIS | 3601199005 | GEN HOSP | 4 | 15,012.00 |
| TechIdent no STERIS | | | | | |
| 6000 TUNNEL WASHER | STERIS | 3606302009 | M.B GEN | 4 | 15,192.00 |
| TechIdent no STERIS | | | | | |

Validity date: 01/31/2019   The price quoted in this proposal will remain firm for ninety (90) days from this date.

**RENEWAL SERVICE CONTRACT/Date:**
6900103831 / 11/02/2018



| Model nr. | Asset No. | Serial no. | Location | PM/YR | Price |
|---|---|---|---|---|---|
| 6036 TW TUNNEL WASHER<br>TechIdent no STERIS | STERIS | 3622507001 | HELEN DILLARD | 4 | 15,192.00 |
| 76" FLR DD RL R2 STERILIZER<br>TechIdent no STERIS | STERIS | 010430206G | M.B GEN | 4 | 15,192.00 |
| 76" FLR DD RL R2W STERILIZER<br>TechIdent no STERIS | STERIS | 010280227G | M.B GEN | 4 | 15,192.00 |
| 9500 CW RACK WASHER<br>TechIdent no STERIS | STERIS | 3619307001 | HELEN DILLARD | 4 | 15,168.00 |
| ABB ROBOT<br>TechIdent no TUTTNAUER | ABB | IRB4600M2004 | M.B.GEN | 4 | 12,492.00 |
| BASIL 9500 PWR DD CAGE & RACK WASHER<br>TechIdent no GETINGE | STERIS | 3622003003 | MED CTR PSB | 4 | 15,960.00 |
| BASIL 9500 PWR DD CAGE & RACK WASHER<br>TechIdent no GETINGE | STERIS | 3623202001 | MED CTR PSB 1FL | 4 | 15,960.00 |
| E-3053-1 MED STER STERILIZER<br>TechIdent no STERIS | STERIS | 010779102G | GEN HOSP | 4 | 10,692.00 |
| GE 12222 ARC-2<br>TechIdent no STERIS | | 0011175360-010-01 | | 4 | 8,505.00 |
| GE 12222 ARC-2<br>TechIdent no STERIS/FINNAQUA | | 0011175360-020-01 | | 4 | 8,505.00 |
| GE122222 Sterilization, Swedi<br>TechIdent no STERIS | GETINGE | 5102734-010-01 | CVRB 5TH. FL | 4 | 10,128.00 |
| GE122222 Sterilization, Swedi<br>TechIdent no STERIS/FINNAQUA | GETINGE | 5102734-020-01 | CVRB 5TH. FL | 4 | 10,128.00 |
| GEW112222 CAGE & RACK WASHER<br>TechIdent no STERIS | GETINGE | USR0914004 | MED SCIENCE | 4 | 10,380.00 |
| TBJ BEDDING DISPENCER BEDDING DISPENCER<br>TechIdent no STERIS/FINNAQUA | TBJ | S0121912-1 | M.B.GEN | 4 | 8,700.00 |
| TBJ BEDDING DISPENSER BEDDING DISPENSER | TBJ | SOO91470-1 | MED SCIENCE | 4 | 8,436.00 |
| TUTTNAUER STERILIZER | TUTTNAUER | 2211084 | ROCK HALL LARC | 4 | 16,896.00 |
| | | | | Total | 403,470.00 |

Invoice interval (in month): 3

Invoicing method: Advanced Invoicing

Customer Approval:
Customer name: [signature] Lo&um
Title: Manager
Phone no.: 415-476-1885
Purchase order no. *:

* Submission of payment indicates acceptance of terms and conditions. A copy of the purchase order is required for agreements totaling $5000.00 or more.

Validity date: 01/31/2019  The price quoted in this proposal will remain firm for ninety (90) days from this date.

# GETINGE USA SALES, LLC SERVICE PROGRAM TERMS AND CONDITIONS

You can participate in the proposed Getinge USA Sales, LLC. Service Program by signing and completing the information required under "Customer Approval" on the attached proposal and submitting this Agreement to the Getinge USA Sales, LLC. Customer Service Center. This proposal identifies by level of coverage, model, serial number and location the equipment that will be subject to this Agreement. This Agreement will become effective on the date it has been approved by Getinge USA Sales, LLC as set forth below.

## STANDARD SERVICE AGREEMENTS – SUMMARY

### Total Care 2 Plan:
- One (1) annual Preventive Maintenance (Major) Labor / PM
- Four (4) quarterly Preventive Inspections (Minor) Labor / PI
- Unscheduled Maintenance Labor U/M
- Parts Plan - Type A
- Parts Plan - Type B
- Parts Plan - Type C
- Parts Plan - Type D

Four (4) preventive events annually. During 1 event. The Major and one (1) Minor Inspection will be completed at the same time.

### SERVICE AGREEMENT MODULES – DETAILS

### 1.   PREVENTIVE MAINTENANCE (MAJOR) LABOR / PM:

Getinge USA Sales, LLC will perform one (1) Scheduled Maintenance activity completed annually. This maintenance will be performed by or under the supervision of Getinge trained and certified technicians. Getinge will rebuild or replace any Scheduled Maintenance designation part that has failed due to wear and tear or which requires replacement outlined by the OEM Service Manual. Each Scheduled Maintenance will be performed in accordance with established procedures and shall include PI inspection of all equipment. All labor required accomplishing the Scheduled Maintenance, adjustments, lubrication, installation or rebuild of replacement parts and testing is included.

### 2.   PREVENTIVE INSPECTION (MINOR) LABOR / PI:

Getinge USA Sales, LLC will include all labor to perform one (1) Preventive Inspection in accordance with established procedures at intervals outlined in the attached proposals. This maintenance will be performed by or under the supervision of Getinge trained and certified technicians as required by the OEM Service Manual. A detailed inspectionof the overall equipment functionality during standby as well as during operation will be accomplished. Any defects will be documented and reported to the equipment owners via a Service Call Report.

### 3.   UNSCHEDULED MAINTENANCE LABOR / UM:

Getinge USA Sales, LLC will provide all labor to accomplish Unscheduled Maintenance (i.e. "Call Backs", "Break-Fix") activities. These by definition are considered not to fall under the category of "Preventive Maintenance" or "Preventive Inspections". Any defects will be documentedand reported to the equipment owners via a Service Call Report. These activities will be performed by or under the supervision of Getinge trained and certified technicians.

### 4.   PARTS– TYPE A:

Only OEM Parts provided by Getinge USA Sales, LLC will be used to perform Scheduled Maintenance activities as outlined in the OEM manuals. These parts will be replaced by or under the supervision of Getinge trained and certified technicians and documented on a Service Call Report.
**EXCLUSIONS:** Parts listed under the category of Type B, Type C and Type D are not included unless outlined specifically in the attached proposal.

### 5.   PARTS– TYPE B:

Only OEM Parts provided by Getinge USA Sales, LLC will be used to make repairs while performing Unscheduled Maintenance (i.e. "Call Backs", "Break-Fix") activities. These parts will be replaced by or under the supervision of

Getinge trained and certified technicians and documented on a Service Call Report.
**EXCLUSIONS:** Parts listed under the categories of Type A, Type C and Type D are not included unless outlined specifically in the attachedproposal.

## 6. PARTS – TYPE C:

Only OEM Parts provided by Getinge USA Sales, LLC will be used to make repairs while performing Unscheduled Maintenance (i.e. "Call Backs", "Break-Fix") activities. Components in this category are as follows: Control Components (such as CPU Boards, Control Boards, Output Cards, Displays, etc.), Pump 1 HP and greater (Vacuum, Circulating, Booster, etc.), air compressors, blower assemblies, sonic generators, heat exchangers, or heater coils (including steam or electric). These parts will be replaced by or under the supervision of Getinge trained and certified technicians and documented on a Service Call Report.
**EXCLUSIONS:** Parts listed under the categories of Type A, Type B and Type D are not included unless outlined specifically in the attached proposal.

## 7. PARTS – TYPE D:

Only OEM Parts provided byGetinge USA Sales, LLC will be used to make repairs while performing Unscheduled Maintenance (i.e. "Call Backs", "Break - Fix" ) activities that are considered "Expendable". Parts may include but not limited to; Door Gaskets, HEPA Filter, Load Probes, Effluent filter, In - Stu Filters. These parts will be replaced by or under the supervision of Getinge trained and certified technicians and documented on a Service Call Report.
**EXCLUSIONS:** Parts listed under the categories of Type A, Type B and Type C are not included unless outlined specifically in the attached proposal.

### GENERAL EXCLUSIONS:
This agreement does not include welding or modification to A.S.M.E. coded vessels, door plates (including glass doors), renovation of equipment (including Modernization Packages) or repair of damages caused by acts of God. This agreement does not include Consumable parts or products (unless specified in the special section of this contract), e.g. detergents, sterilizer monitors, etc. This Agreement does not include any labor or material for service lines and fittings, equipment not set forth on this proposal or operating problems related to environmental conditions, e.g. electrical, steam, water, air, and/or ventilation that do not comply with equipment specifications. This also refers to any fault condition found by Getinge USA Sales, LLC technicians as a result of improper operation of the equipment by operating personnel. Repairs necessary as the result of neglect of improper operation of the equipment by the customer of its employees or agents are not included. This Agreement does not include chamber cleanings or routine daily, weekly or monthly user maintenance recommended in the Operator's or Owner's Manuals for the indicated equipment. Such routine maintenance shall be considered the responsibility of the customer. Repair of equipment necessary because of customer failure to perform such routine maintenance is likewise not covered by this agreement. This agreement does not include software, software upgrades, control upgrades, door rebuilds, replacement generators, sonic transducers, non-pressure vessel welding repairs, water tanks and reservoirs, This agreement does not include repairs to the basic structure components of the equipment such as vessel / chamber, frame, stand, door or door plate.

**Preferred Labor Rate:     $175.00          Prevailing Labor Rate     $220.00**

**Normal Work Hours** – This Agreement specified equipment maintenance be performed during normal work hours – 8AM through 5PM, Monday through Friday. Work performed on equipment listed above outside the scope of the contract will be billed at the preferred labor rate.

**After Hours** – Work performed after 5PM through 8AM, Monday through Saturday, (excluding national holidays) will be billed at 1.5 times the preferred labor rate at a minimum of 4 hours, portal to portal.

**Emergency After Hours** – Emergency after hours work performed on a Sunday or national holiday will be billed at 2 times the preferred labor rate at a minimum of 4 hours portal to portal.

**Non Contract related repairs** – Work performed on equipment **(not)** listed above will be billed at the prevailing labor rate. In the case of after-hours or emergency after-hours repairs, mulipliers (times factors) as detailed in the aforementioned paragraphs shall apply.

**LIMITED PARTS WARRANTY**

Getinge USA Sales, LLC warrants to the purchaser as limited below that parts purchased from Getinge USA Sales, LLC for installation in equipment manufactured by Getinge USA Sales, LLC which are installed, operated and maintained in accordance with Getinge USA Sales, LLC's stated recommendations will be free from defects in material and workmanship.

## 1.0 WARRANTY PERIOD.

1.1 Parts installed by Getinge USA Sales, LLC – Except as otherwise set forth herein, parts installed by a Getinge USA Sales, LLC factory representative are warranted for a period of ninety (90) days from the date the parts are installed by Getinge USA Sales, LLC.

1.2 Parts installed by Purchaser - Except as otherwise set forth herein, parts that are not installed by a Getinge USA Sales, LLC factory representative are warranted for a period of sixty (60) days from the date the part is shipped from Getinge USA Sales, LLC.

1.3 Replacement Parts – Parts replaced under warranty will be warranted for the remainder of the original part warranty period.

1.4 Electrical and Electronic Parts - Electrical and electronic parts installed by a Getinge USA Sales, LLC factory representative are warranted for a period of ninety (90) days from the date the parts are installed by Getinge USA Sales, LLC. Getinge USA Sales, LLC does not warrant electrical and electronic parts that are not installed by a Getinge USA Sales, LLC factory representative. Examples include electro-mechanical components, electronic circuit boards and transducers, microprocessor or memory chips, etc.

1.5 Expendable/Consumable Parts – Expendable parts (parts that are worn, used or consumed as part of normal operation) are warranted for a period of thirty (30) days from the date shipped from Getinge USA Sales, LLC, , or installed by Getinge USA Sales, LLC factory representative. Examples of expendable parts include: gaskets, trap elements, lubricators, filters, fuses, lamps, valve repair kits, etc.

## 2.0 RETURNS POLICY:

In limited circumstances, Getinge USA Sales, LLC may accept returns of non-defective parts in exchange for a credit not to exceed the amount of the original purchase price. The following conditions apply to all such returns:
a) All parts return transactions must be approved prior to the return of credit.
b) Enclosed paperwork must include the Return Materials Authorization with the RMA number fastened to the exterior of the package. Packages received without proper authorization will be returned to the sender freight collect.
c) Returned items submitted for credit must be unused and in like new condition.
d) Returns shall include original packaging, manuals and documents.
e) Electrical/electronic components are not eligible for return.
f) All returns are subject to a 20% restocking fee which will be assessed when any resulting credits are issued.

**For answers to specific questions contact the Getinge USA Sales, LLC Customer Service Center at 1-800-950-9912**

# Getinge Standard Service Terms and Conditions

This Getinge Standard Service Agreement (this "Agreement") applies to the servicing of certain equipment (the "Equipment") identified in the attached price quote (the "Quote") signed by Getinge USA Sales, LLC and the customer identified therein ("Customer") for the applicable extended warranty or service plan and at the hours of operation and rates indicated in Appendix A (the "Service Plan").

### 1. PAYMENT TERMS.

The amount listed on the Quote (the "Annual Price") is due from Customer in accordance with the terms of the Quote. Services for the Equipment beyond the scope of Quote will be charged at the rates listed in the Quote, or charged at the prevailing rates if not otherwise specified, for which payment terms of the Quote. Services for the Equipment beyond the scope of Quote will be charged at the rates listed in the Quote, or charged at the prevailing rates if not otherwise specified, for which payment terms are net 30 days from invoice date.

### 2. SALES AND SIMILAR TAXES.

Unless otherwise stated, Getinge's prices do not include sales, use, excise or similar taxes. All applicable taxes will be billed on invoice unless Customer's current exemption certificate is on file or is provided in advance to Getinge.

## 3. TERMINATION.

Either party may terminate this Agreement, in whole or in part, at any time without cause after providing the other party with 30 days' prior written notice. Upon notice, Getinge may cancel any services scheduled to be performed following the date of termination. Customer will be invoiced for any charges through the date of termination. Getinge will not be responsible for repairing Equipment which required repair during the term of the Service Plan if Getinge is advised after the expiration or termination of the Service Plan, or if a repair visit cannot be scheduled by Customer before the expiration or termination.

## 4. INITIAL INSPECTION OF EQUIPMENT.

For Equipment not previously covered by a Getinge extended warranty plan or other Getinge service plan, the Equipment may be inspected by a Getinge representative to determine its condition within 30 days of the date of this Agreement. If any repairs are required to meet the original manufacturer's specifications, or if Equipment is unrepairable, Getinge may, in its sole discretion, amend the Quote to remove such Equipment and make an appropriate adjustment to the Annual Price. Nothing in this Agreement shall be construed to impose any duty or obligation whatsoever on Getinge for any Equipment that does not meet original manufacturer's specifications or unrepairable Equipment.

## 5. PARTS.

Parts are replacement components of the Equipment and include both new and refurbished parts, at Getinge's sole discretion. All replacement parts will be installed on an exchange basis. Parts removed will become the property of Getinge upon their removal from the Equipment.

## 6. CONFIDENTIALITY.

Each party agrees to keep confidential any non-public information of the other party received in any form, including without limitation, the terms of this Agreement. If any disclosure of the other party's confidential information is required by law, the party required to make such disclosure shall provide sufficient notice to the other party prior to making such disclosure in order to allow such party time to undertake legal or other action to prevent such disclosure or otherwise obtain confidential treatment of such disclosure.

Notwithstanding the above, either party shall have the right to disclose the Agreement or its terms to any of its' affiliates, attorneys, accountants or other third party representatives to the extent such disclosure is required in order for such recipient parties to perform their roles or responsibilities to the disclosing party; provided that such recipient parties shall have, in advance, agreed in writing that they will not disclose or use the information beyond what is required for the performance of services to the disclosing party and shall in no event disclose such information to any other party.

## 7. DISCOUNTS/REBATES/COMPLIANCE.

As applicable, the parties agree that any discounts or rebates on items or services provided by Getinge under this Agreement constitute a "discount or other reduction in price" of the items or services under Section 1128B(b)(3)(A) of the Social Security Act, 42 U.S.C. §1320a-7b(b)(3)(A). Customer must properly disclose actual prices paid for items or services acquired pursuant to this Agreement, including any discounts or rebates, on any Medicare, Medicaid or other Federal Health Care Program (as defined in Section 1128B(f) of the Social Security Act) cost report for the fiscal year in which earned or the following year. In addition, Customer must furnish, upon request by the Secretary of Health and Human Services, the State Medicaid or other Federal Health Care Program agency, all information concerning the amount or value of the discounts or rebates, including this Agreement and related invoices and statements. Customer warrants that no kickbacks were offered, provided and/or solicited by Customer or Getinge as a precondition for entering into this Agreement with Getinge.

## 8. WARRANTY.

Getinge's Standard Service Warranty Policy is attached as Exhibit A hereto.

## 9. LIMITATION OF LIABILITY.

Getinge's liability hereunder shall not exceed the aggregate amount of the Annual Price paid by Customer during the trailing twelve-month period prior to the month in which the most recent event giving rise to the liability occurred in connection with this Agreement. IN NO EVENT, SHALL GETINGE OR ITS AFFILIATES, AGENTS, EMPLOYEES OR SUPPLIERS BE LIABLE FOR ANY LOSS OF PROFITS OR REVENUES, CONSEQUENTIAL, INCIDENTAL, UNFORESEEN, SPECIAL OR PUNITIVE DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF USE OF ANY EQUIPMENT OR OTHER PRODUCTS, LOSS OF STORED, TRANSMITTED OR RECORDED DATA, DAMAGE TO

EQUIPMENT OR OTHER PRODUCTS, COST OF CAPITAL, COST OF SUBSTITUTE EQUIPMENT OR OTHER PRODUCTS, FACILITIES, SERVICE OR REPLACEMENT SERVICE OR DOWNTIME COSTS. Getinge shall not be liable for (i) any use, modifications, service or maintenance of Equipment by personnel (of Customer or otherwise) who have not been trained by Getinge or Getinge-approved personnel, (ii) any use, modifications, service or maintenance of Equipment not expressly authorized by Getinge, (iii) inability to use the Equipment, or (iv) any negligence or willful misconduct of Customer, its employees or agents, or any party other than Getinge. This section will apply to any action, for any cause whatsoever, whether in contract or in tort, including negligence, strict liability, warranty or otherwise, and is a separate, essential term of this Agreement, and shall be effective upon the failure of any remedy, exclusive or not. This section shall survive termination or expiration of this Agreement.

## 10. INDEPENDENT CONTRACTORS.
Parties to this Agreement are independent contractors. This Agreement does not create or otherwise imply that there is any relationship of employment, agency, franchise, joint venture, partnership or other similar legal relationship among the parties. No party has the authority to bind or act on behalf of any other party except as otherwise expressly stated in this Agreement. Getinge shall not be responsible for any worker's compensation claims of Customer's employees, contractor or agents.

## 11. ARBITRATION OF DISPUTES.
Parties agree that all disputes arising out of this Agreement, except for claims involving third parties, will be resolved by a single binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and will be conducted exclusively in New York and governed by New York laws.

## 12. ASSIGNMENTS.
Neither party may assign this Agreement without the express written consent of the other party, and any such assignment shall be void, invalid and shall have no legal effect; provided, however, that either party may assign this Agreement to a commonly-owned subsidiary, affiliate, division, or a successor-in-interest with at least 30 days advance written notice to other party.

## 13. FORCE MAJEURE.
Neither party shall be liable for any delay or failure of performance if and to the extent such delay or failure is caused by (interruption of service resulting directing or indirectly from acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, flood, the elements, epidemics, strikes, labor disputes, shortages of fuel, power, suitable parts, materials, labor or transportation, governmental or regulatory actions, or circumstances beyond its reasonable control and that by the exercise of due diligence it is unable to prevent, provided that the non-performing party uses its commercially reasonable efforts to overcome the same.

## 14. BOOKS AND RECORDS.
Getinge agrees that, until the expiration of 4 years after the furnishing of any goods and services pursuant to this Agreement, it will make available, upon written request of the Secretary of Health and Human Services or the Comptroller General of the United States or any of their duly authorized representatives, copies of this Agreement and any books, documents, records and other data of Getinge that are necessary to certify the nature and extent of the costs incurred by Customer in purchasing such goods and services.

## 15. EXCLUSION.
Getinge it is not currently listed by governmental agency as excluded, debarred, or otherwise ineligible for participation in any governmental health care program.

## 16. HIPAA.
Getinge does not use nor expect to receive any protected health information ("PHI") as defined under HIPAA or HITECH during its routine service calls. To the extent Getinge receives any incidental disclosure of PHI as defined under 45 CFR 164.502(a)(1)(iii), Getinge agrees to keep such PHI confidential.

## 17. MISCELLANEOUS.
The remedies provided for herein are the sole and exclusive remedies of Customer. Waiver by Getinge of a breach by Customer of any provision of this Agreement shall not be deemed a waiver of future compliance therewith, and all of the provisions hereunder shall remain in full force and effect. This Agreement, the Quote and Appendix A collectively contain the entire and only agreement between the parties respecting service of the Equipment, and all prior and collateral representations, promises and conditions in connection therewith are superseded hereby. Any notice permitted or required under this Agreement shall be in writing and delivered to the receiving party at the address set

forth in this Agreement. This Agreement shall not be construed to transfer either Party's intellectual property rights to the other Party or cover intellectual property infringement. No modification, waiver or termination of any provisions contained in this Agreement or any future representation, promise or conditions in connection with the subject matter hereof shall be binding upon Getinge or Customer unless made in writing and signed by an officer or other authorized representative thereof. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## Exhibit A
## Getinge Standard Service Warranty Policy

1. Getinge's warranty shall be as provided in this Section 1 (the "Warranty"), subject in all respects to the exclusions set forth in the following Section 2, except as may be supplemented or amended by Exhibit A-1, if attached. Getinge warrants to Customer that (i) services provided to Customer hereunder shall be performed in a good and workmanlike manner in accordance with applicable industry standards for such services, and (ii) all parts furnished under this Agreement shall be free of material defects in material and workmanship at the time of installation and for a period 90 days, unless otherwise specified. Customer specifically acknowledges and agrees that Getinge's sole and exclusive liability to Customer for a material breach of this Warranty is limited to repair or replacement of the part(s) and/or reperformance of the services, as applicable, at the sole option of Getinge. This Agreement does not extend the period or coverage of any original warranty of the Equipment.

EXCEPT AS EXPRESSLY PROVIDED HEREIN, GETINGE MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY PARTS OR SERVICES PROVIDED BY GETINGE INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. PARTS DISTRIBUTED, BUT NOT MANUFACTURED, BY GETINGE ARE NOT WARRANTED BY GETINGE AND CUSTOMER MUST INSTEAD RELY ON THE REPRESENTATIONS AND WARRANTIES, IF ANY, PROVIDED DIRECTLY TO CUSTOMER BY THE MANUFACTURER OF SUCH EQUIPMENT.

2. EXCLUSIONS. The Service Plan and the Warranty shall not apply to the Equipment and shall be deemed null and void as to such Equipment if:
   (i) Equipment is not stored, installed, maintained or used in accordance with its applicable instructions for use or operating manual or if it is used for a purpose not indicated in the applicable instructions for use or operating manual;
   (ii) any repairs, alterations or other work has been performed by Customer or others on such Equipment, other than work performed or authorized by Getinge;
   (iii) Equipment has been damaged as a result, in whole or in part, from the use of components, accessories, parts or supplies not furnished by Getinge;
   (iv) service to the Equipment and/or parts therefor are required as the result of abuse, misuse, improper maintenance, physical damage, accident, or the negligence of any party other than Getinge; or
   (v) recommended preventative maintenance is not performed by Customer; or
   (vi) Equipment is moved from the Customer's current location.

The following are expressly excluded from the Warranty, and are not covered by the Service Plan:
   (i) cosmetic damage (e.g., nicks, dents, scrapes, scratches), however caused; and
   (ii) damage caused by accidental or unusual physical, electrical or electromagnetic stress, neglect, misuse, failure of electric power, air conditioning, humidity control, or transportation, or disaster, including fire, water, wind and lightning, vandalism or burglary, or any other cause other than ordinary use.